\

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT EVERETT PAPENHAUSEN, | No. 2:14-cv-1904 JAM CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN OF CALIFORNIA CORRECTIONAL CENTER, | |
| Respondent. | |

Petitioner, a state prisoner, is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his 2012 conviction for selling and possession of methamphetamine, for which he was sentenced to a prison term of nine-and-a-half years.[1]  (ECF No. 1 ("Ptn.") at 2.)  Respondent has filed an answer (ECF No. 14), and petitioner has filed a traverse (ECF No. 28).  Upon careful consideration of the record and the applicable law, the undersigned will recommend that the petition be denied.

## BACKGROUND

In its affirmation of the judgment on appeal, the California Court of Appeal, Third Appellate District, recounted the facts of petitioner's conviction:

---

[1] While petitioner is currently housed in the Plumas County Jail, he indicates that he is still in custody pursuant to the challenged conviction.  (ECF No. 33.)

1

>A jury convicted defendant Scott Everett Papenhausen of selling or furnishing methamphetamine (Health & Saf. Code, § 11379, subd. (a); count I), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) as a lesser included offense to that charged in count II (possession for sale, Health & Saf. Code, § 11378), and misdemeanor resisting (Pen. Code, § 148, subd. (a)(1)) as a lesser offense to that charged in count III (resisting by means of threat or violence, Pen. Code, § 69). In connection with count II, the jury found that defendant personally used a deadly or dangerous weapon, to wit, a ceramic lamp (Pen. Code, § 12022, subd. (b)(1)). In bifurcated proceedings, defendant admitted two prior prison term allegations (Pen. Code, § 667.5, subd. (b)) and a prior drug conviction allegation (Health & Saf. Code, § 11370.2, subd. (c)).

People v. Papenhausen, 2013 WL 2451765, *1 (Cal. App. 3 June 7, 2013), also at ECF No. 14, Ex. A.

Petitioner appealed his conviction (Lod. Docs. 1-3), and on June 7, 2013, the California Court of Appeal for the Third Appellate District directed the trial court to correct errors in the abstract of judgment but otherwise affirmed the judgment.[2]

Petitioner filed a petition for review in the California Supreme Court, which was denied on August 14, 2013. (Lod. Docs. 5-6.) Petitioner did not file any state habeas petitions. (Ptn. at 4.)

Petitioner constructively filed the instant action on August 7, 2014. (Ptn. at 5.)

ANALYSIS

I. AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] See ECF No. 15 (Respondent's Notice of Lodging Documents in Paper).

2

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade,

538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal

4

court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013).  "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim.  Id. at 1097.

II. Petitioner's Claim

Petitioner claims that his trial counsel rendered ineffective assistance by failing to present evidence at the pretrial suppression hearing that the owner of petitioner's residence, Vince Villany, did not consent to police entry into his home.  Petitioner contends that, if counsel had introduced this evidence at the hearing, the entry would have been found unlawful and the evidence against petitioner suppressed.[3]  (Ptn. at 3; Lod. Doc. 1 at 9-12.)

A. State Court Opinion

Addressing this claim on direct review, the state court of appeal set forth the facts and analyzed the claim as follows[4]:

> Defendant contends counsel rendered ineffective assistance at the suppression hearing because he failed to call Vincent Villany to testify that the officers did not have his consent to enter his residence to arrest defendant on a misdemeanor arrest warrant. Had Villany so testified at the suppression hearing, defendant argues that his arrest would have been deemed invalid, the

---

[3] Petitioner argues in his traverse that the state laws under which he was convicted and sentenced are unconstitutional.  However, a traverse is not the proper pleading to raise additional grounds for relief.  Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  Also, these arguments have not been exhausted in the state courts as required for federal habeas review.

[4] A federal habeas court will "look through" a silent state court denial to the last reasoned state court decision rejecting the same claim, if such a decision exists, and subject the underlying decision to § 2254(d) scrutiny. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

5

methamphetamine found during the search incident to his arrest would have been suppressed as fruit of the poisonous tree, and the charges would have been dismissed. The People argue defense counsel had a valid tactical reason not to call Villany to testify at the suppression hearing. We conclude that the record is inadequate to evaluate whether counsel's performance was deficient in not calling Villany to testify at the suppression motion.

*Background*

Defendant represented himself at the preliminary hearing on February 1, 2012, when Deputy Sheriff Steve Clark testified that in his presence, Deputy Sheriff Phillip Shannon got permission from the homeowner (Vincent Villany) to enter the house. Deputy Shannon testified at the hearing as well but was not asked about Villany's consent.

Defendant represented himself at arraignment on February 16, 2012. Still representing himself, defendant filed a motion to suppress, challenging his arrest and the seizure of evidence incident to his arrest. On March 9, 2012, defendant requested counsel and the trial court appointed Douglas Prouty.

On May 2, 2012, defense counsel filed a Pitchess [FN1] motion attached to which were the reports of Deputies Clark and Shannon. Deputy Clark stated in his report that Villany consented to their entry to arrest defendant and Reatha Mercer on arrest warrants. Deputy Shannon stated in his report that Villany at first did not want them to enter but because defendant had lied to him about outstanding warrants, Villany consented.

[FN1: Pitchess v. Superior Court, 11 Cal. 2d 531 (Pitchess).]

At the May 2, 2012, hearing on the Pitchess motion and defendant's suppression motion, defense counsel stated that defendant's suppression motion was based on his belief that the officers did not have sufficient cause even with the warrant. Deputy Clark testified that he knew that there was an outstanding warrant for defendant's arrest. On December 26, 2011, the deputy received information from an anonymous informant that defendant was located at a particular residence owned by Villany. Several hours later, Deputies Clark and Shannon, and Reserve Deputy Brian Smith went to the residence and contacted Villany. Villany explained that defendant was on the third floor and gave the officers permission to enter. Reserve Deputy Smith stayed at the back of the house while Deputies Clark and Shannon entered the exterior door to the second story. Deputy Clark announced his presence but received no reply. Deputy Clark proceeded up the stairs to the third floor loft and again announced his presence. Again there was no reply. Deputy Clark found defendant on the floor in a closet. The deputy ordered defendant to put his hands to his side, defendant refused, and the deputy pointed his Taser at defendant. Defendant crawled towards a butcher knife two to three feet away and ignored the deputy's orders. Defendant stood up and grabbed a lamp. Deputy Clark grabbed defendant and the two deputies then took defendant into

custody.

On cross-examination, Deputy Clark explained that he had known about the arrest warrant for defendant for two to six months but had not seen defendant. When the deputies arrived at Villany's residence, Deputy Shannon first spoke with Villany. Deputy Clark approached them and heard Deputy Shannon "again" ask Villany for permission to enter the residence. Defense counsel then inquired: "[I]sn't it true that Mr. Villany *initially* told Deputy Shannon he did not want you going into the residence?" (Italics added.) Deputy Clark answered, "Not that I know of. I did not hear any of that—[¶] ... [¶] ... if that did happen."

Only Deputy Clark testified at the suppression hearing and the matter was submitted without argument. The trial court denied the suppression motion.

At trial which began on May 8, 2012, the defense called Villany to testify. Villany explained that Mercer and defendant had been living in his home for about 45 days prior to defendant's arrest. Upon the deputies' arrival, Villany claimed that he asked Deputy Shannon whether he had a warrant to be on his property. Although the deputy claimed he had one, he refused to show it to Villany and threatened to take him to jail if he did not move out of the way. Another deputy was also present. Villany denied having been asked for his consent to enter his residence. He did not tell them they could not enter. Defense counsel asked what happened next. Villany responded, "They said, 'Is Scott here?' I said, 'Well, yes, he's upstairs.' And they said, 'Is the door open, the door at the top of the stairs?' I says [sic], 'yes, it's always open.' And they said, 'Well, you go first,' [s]o I went up the stairs, opened the door, walked inside the second level, and I said, 'Scott,' kind of loudly, twice, and got no reply. [¶] The deputies followed, pretty much, right in back of me. And asked, 'Well, where's he staying?' 'Up there.' And I pointed to ... the upper level. And the two deputies went on upstairs." Villany opened the second story door when the deputies asked him to do so. Villany denied that the deputies announced their presence. Two deputies went up the stairs to the third level while Villany stayed in the living room. After some noise and shouting, defendant, in handcuffs, was escorted down the stairs by the deputies. Meanwhile, Villany pointed out a downstairs bathroom where Mercer was found.

On cross-examination, Villany denied that Deputy Shannon told him that there was an arrest warrant for defendant. Then, Villany admitted that Deputy Shannon explained that he had a warrant for defendant. When Villany found out, he admitted that he was "extremely mad." Villany denied that he told the deputies to go ahead and arrest defendant. Instead, Villany claimed that "[t]here was no conversation about warrants or drugs at all, until they actually brought [defendant] down to the lower level." Villany then admitted that there was a conversation about a warrant when he first spoke with Deputy Shannon. Villany stated that he asked Deputy Shannon if he had a warrant to be on his property and that the deputy responded affirmatively but refused to show it to Villany,

7

claiming the deputy said, " 'we don't need one, get out of the way or you're going right to jail.' " Villany had called the sheriff's office to say the deputies acted in a professional manner. He did not complain about Deputy Shannon's conduct, explaining he thought the deputy was " 'just excited at the time.' "

*Analysis*

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. (Strickland v. Washington (1984) 466 U.S. 668, 687–688, 691–692; People v. Ledesma (1987) 43 Cal.3d 171, 216–218 (Ledesma).) To demonstrate deficient performance, defendant "must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (People v. Pope (1979) 23 Cal.3d 412, 425.) " 'Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' " (People v. Zapien (1993) 4 Cal.4th 929, 980.) Where " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] ... unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (People v. Mendoza Tello (1997) 15 Cal.4th 264, 266.) "[A] claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." (People v. Wilson (1992) 3 Cal.4th 926, 936.)

"Generally, ... prejudice must be affirmatively proved." (Ledesma, supra, 43 Cal.3d at p. 217.) To demonstrate prejudice, defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (Id. at pp. 217–218; People v. Williams (1997) 16 Cal.4th 153, 215.)

 Based on Villany's testimony at trial and defense counsel's questioning of Deputy Clark at the suppression hearing, defendant claims and the People agree that it can be reasonably inferred that counsel was aware, at the time of the suppression hearing, that Villany did not voluntarily consent to the deputies' entry into his home. We disagree.

The record sheds no light on why defense counsel did not call Villany to testify at the suppression hearing. We can fathom a satisfactory reason. Defense counsel's questioning of Deputy Clark at the suppression hearing whether Villany had "initially" told Deputy Shannon that they were not allowed into the residence does not necessarily mean that defense counsel was aware that Villany would testify at trial that he did not voluntarily consent or that he had been threatened. Defense counsel's questioning of Deputy Clark at the suppression hearing reflects that he had read the report of Deputy Shannon who had stated that Villany initially refused to

8

> consent but when he learned that defendant had lied about not having any warrants, Villany then consented. [FN 2]
>
> [FN2: At trial, Deputy Shannon explained that he contacted Villany when they first arrived and that Villany did not consent to their entry. When Deputy Shannon explained that defendant and Mercer both had outstanding warrants, Villany became upset and stated that he had asked defendant before he moved in and defendant claimed he had no warrants. Villany then consented to the deputies' entry.]
>
> Although Villany testified at trial that he had spoken to defense counsel two to three weeks before trial began and that counsel had asked "some questions about what happened that night," Villany did not testify that he had explained to defense counsel at that time or prior to the suppression hearing that he never consented to the deputies' entry into his home or that he had been threatened with jail if he did not move out of the way. Also, Villany may have given defense counsel conflicting information. On cross-examination, Villany gave inconsistent statements about his consent, first denying any discussion with Deputy Shannon about a warrant and then admitting that he had asked about a warrant. Villany also admitted that he was extremely mad when told that defendant had an arrest warrant and that defendant had lied to Villany. Villany never complained to the sheriff's office about the deputies' conduct but instead told the sheriff's office that the deputies had acted professionally.
>
> Defense counsel has not had an opportunity to explain his decision not to call Villany at the suppression hearing. Defendant has failed to demonstrate on this record that counsel's performance was deficient. Defendant is relegated to filing a petition for a writ of habeas corpus.

Papenhausen, 2013 WL 2451765, **1-4.

B. Legal Standard

The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

9

proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-718 (9th Cir. 1984) (per curiam).

As to ineffective assistance claims in the federal habeas context, the Supreme Court has instructed: "The standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.] . . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105 (internal citations omitted).

C. Analysis

1. Facts

The undersigned has reviewed the transcript of the May 2, 2012 hearing on petitioner's suppression motion.[5] (Reporter's Transcript (RT) 108-138.) As set forth above, attorney Doug Prouty argued petitioner's pro se motion, which was "based on the fact that [petitioner] did not feel that there was sufficient cause, even with a warrant, based upon the actions of the police officers." (RT 117; see RT 125.) Deputy Clark testified that the officers were given permission to go inside the residence. (RT 120.) Cross-examining Clark, Prouty asked:

> Q: Isn't it true that Mr. Villany initially told Deputy Shannon he did not want you going into the residence?
>
> A: Not that I know of. I did not hear any of that –
>
> Q: I see.
>
> A: -- if that did happen.

(RT 127.) Prouty submitted the matter without calling any witnesses, and the trial court denied the motion to suppress. (RT 133-134.)

////

---

[5] See Mapp v. Ohio, 367 U.S. 643 (1961).

10

At trial, Deputy Clark testified that he heard Villany give consent to enter his residence. (RT 231.) Deputy Shannon testified that Villany

> denied consent at first. Then I explained to him that Mr. Papenhausen and Mrs. Mercer[6] both had outstanding warrants, and that's when he became upset, because he told me he had talked to Papenhausen prior to him moving into his residence a month ago. [H]e specifically asked Mr. Papenhausen if he had any warrants. And Mr. Papenhausen told him he did not. And that's why Vincent – Mr. Villany gave us consent to go in the residence and get him.

(RT 295-296.)

Testifying as a defense witness, Villany stated that petitioner and Mercer had been living with him for roughly six weeks after petitioner's house burned down and petitioner asked Villany, a family friend, if he could stay at Villany's house until he found another place. (RT 397-398.) One evening in December 2011, a sheriff's deputy car pulled up to the house, and Villany went outside to ask why they were there. (RT 398.)

> A: So I stepped in front of the stairs, and asked the deputies, actually Deputy Shannon, "Do you have a warrant to be on this property?" And he said, "Yes." And I said, "Well, can I see it?" He said, "Get out of the way or you're going to jail right now."

(RT 399.) Villany testified that he was never shown a warrant and denied there was any conversation about consent to enter the home. (RT 400.) He testified that the three deputies directed him to lead the way to the third floor, where petitioner was staying, and then proceeded to follow him up. (RT 401.)

On cross-examination by the prosecutor, Villany testified:

> Q: Now, I want to be clear about this. So, um, you asked Deputy Shannon, "Do you have a warrant?"
>
> A: That was my first question, yes.
>
> Q: And he said yes?
>
> A: He said yes.
>
> Q: And you say, "Can I see it?"
>
> A: Right.

---

[6] Petitioner's girlfriend, also staying at Villany's house. (Lod. Doc. 1 at 4.)

11

> Q: And he says, "No, get out of the way or you'll be arrested"?
>
> A: Yes. Not arrested. He said, "or you'll go to jail right now."
>
> Q: "Or you'll go to jail"?
>
> A: Right now.
>
> Q: "Right now," and you were never shown the warrant?
>
> A: No. He said, "We don't need one."
>
> Q: Did you have any discussion with Deputy Shannon about why they were here?
>
> A: Um, when an officer tells you to get out of the way or you're going to be arrested, basically, you just get out of the way.
>
> Q: You didn't get out of the way, you went up the stairs with them?
>
> A: He asked me to. I am asked if the door was open, I said, yes. And he said, show us, is what he said. I went up the stairs, opened the door with them closely following behind, and then they entered the area [where petitioner was].

(RT 416-417.)

Villany further testified on cross-examination that he became angry when he learned that the deputies had a warrant for petitioner's arrest, as petitioner had promised him he was not wanted by the police. (RT 418.)

> Q: At that point, did you tell the deputies, go ahead, go get 'em?
>
> A: They already – this was after he was downstairs. There was no conversation about warrants or drugs at all, until they actually brought Mr. Papenhausen down to the lower level.

(RT 418.)

Villany testified again that, before the deputies entered the house, he had been told to "get out of the way or you're going right to jail." (RT 418-419.)

> Q: Mr. Villany, I know this was sometime ago, maybe about six months ago. Are you pretty clear with the sequence?
>
> A: I'm clear about the sequence. When somebody threatens to take me to jail, I'm very clear about that.

(RT 419.)

////

Villany further testified that Deputy Shannon was "belligerent" during this threat. However, Villlany later called the Sheriff's Office to say that, once they "established that there was no direct danger to them," the deputies acted in a professional manner. (RT 419.) "The only discrepancy was the very first few seconds of the encounter, when Mr. Deputy Shannon said we did not need [a warrant], and get out of the way." (RT 420.)  Villany did not complain about Shannon's initial behavior in his phone call to the Sheriff's Office "because I thought he was just excited at the time." (RT 420.)

Villany testified that two or three weeks before trial, Prouty called him on the phone "and asked me some questions about what happened that night." (RT 422-423.)

On direct appeal, petitioner argued that Prouty was ineffective for "present[ing] no affirmative evidence" at the suppression hearing "to rebut [the] claim" that Villany consented to the search. (Lod. Doc. 1 at 9.) "Then, once trial commenced, defense counsel presented Villany, who directly refuted the deputy's testimony and established that consent was obtained purely under color of authority and by virtue of an overt threat." (Id.) "Reasonably competent counsel" would have had Villany testify at the suppression hearing, petitioner argued. "No plausible explanation exists for [Prouty's] failure to present Villany" at the hearing. (Id. at 18-19.)

2. The Record

In evaluating petitioner's claim, the court of appeal "conclude[d] that the record is inadequate to evaluate whether counsel's performance was deficient," citing People v. Mendoza Tello, 15 Cal. 4th 264, 266-67 (1997) (ineffective assistance of counsel claims not proper on direct appeal unless record illuminates all facts necessary to resolve claim, including basis for counsel's challenged decision or shortcoming). After reviewing the record before it, the state court concluded that petitioner failed to demonstrate that his attorney's performance was deficient.

////
////
////
////

13

As the court of appeal noted, the record is silent as to why Prouty did not call Villany at the hearing, and petitioner has not expanded the record by filing a state petition for habeas corpus.[7][8]

Nor does petitioner request an evidentiary hearing in this federal action. See Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2015) ("Petitioners seeking habeas relief cannot obtain an evidentiary hearing on their claims unless they comply with § 2254(e)(2). [This section] severely restricts a petitioner's ability to obtain a hearing on a claim for relief where petitioner has failed to develop the factual basis of a claim in State court proceedings due to a lack of diligence[.]") (internal quotation marks omitted). To show the required diligence, a petitioner must have "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams v. Taylor, 529 U.S. 420, 435 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in the state court in the manner prescribed by state law." Id. at 437.

Moreover, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Cullen v. Pinholster, 563 U.S. 170, 185 (2011).

3. AEDPA/Strickland Review

Having carefully reviewed the existing record, the undersigned concludes that petitioner has not shown that Prouty's performance was deficient or prejudicial.

To be sure, having spoken with Villany prior to the hearing on petitioner's pro se motion to suppress, Prouty failed to call this witness, or any witness, at the hearing, and the motion was denied.

---

[7] On collateral review, the court may hold an evidentiary hearing to determine counsel's reasons for failing to object and the parties may produce additional evidence. Cal. Penal Code § 1484.

[8] In similar circumstances – where the appellate court held, under Mendoza, that the defendant's ineffective assistance claim should be brought in a habeas action – at least one federal court determined that "the California Court of Appeal did not squarely address the merits of [defendant's] claim." Roberts v. Cate, 2013 WL 3973079, *37 (S.D. Cal. Aug. 1, 2013), citing Dye v. Hofbauer, 546 U.S. 1, 6-7 (2006).

14

1    Days later, Villany testified that Deputy Shannon threatened him with jail if he did not
2 "get out of the way" to let the police search his house. While the deputies maintained that Villany
3 gave consent when they informed him there was a warrant for petitioner's arrest, Villany testified
4 that this conversation took place after the deputies brought petitioner downstairs. This directly
5 contradicted the deputies' testimony that Villany consented to the search before deputies went
6 upstairs to arrest petitioner.

7    However, petitioner's claim that the evidence against him would have been suppressed if
8 Prouty had called Villany to testify at the suppression hearing is mere speculation. Even if
9 Villany had offered the same testimony as at trial, it not clear that the hearing judge would have
10 believed Villany's version of events over the deputy sheriffs' version, in which Villany gave
11 consent prior to their entry.[9] Nor has petitioner shown that, under the circumstances of his arrest
12 pursuant to an outstanding warrant, the evidence against him was seized in violation of his Fourth
13 Amendment rights absent Villany's consent.

14    Thus, under § 2254(d), the state courts' denial of petitioner's claim was objectively
15 reasonable. This conclusion assumes that the state courts decided petitioner's claim on the
16 merits. Alternatively, if the state courts' decision is interpreted as a procedural denial under
17 Mendoza, holding that IAC claims are properly brought in habeas proceedings, petitioner has
18 failed to show deficiency and prejudice under Strickland.

19    Accordingly, IT IS HEREBY RECOMMENDED that the petition be denied.

20    These findings and recommendations are submitted to the United States District Judge
21 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
22 after being served with these findings and recommendations, any party may file written
23 objections with the court and serve a copy on all parties. Such a document should be captioned
24 "Objections to Magistrate Judge's Findings and Recommendations." Any response to the
25 objections shall be served and filed within fourteen days after service of the objections. The

---

[9] Indeed, the judge could have concluded that Villany's credibility on this topic was suspect given that Villany had called the Sheriff's Department to report the professionalism of the deputy sheriffs. RT 419.

parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 1, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / pape1094.hc